# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

DAVID CARROLL,

        Plaintiff,

vs.                                                                  No. CIV 08-0959 JB/ACT

LOS ALAMOS NATIONAL SECURITY,
LLC,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Motion to Dismiss, filed

January 15, 2009 (Doc. 6).  The Court held a hearing on March 13, 2009.  The primary issues are:

(i) whether Plaintiff David Carroll's Complaint states a claim under the Employee Retirement

Income Security Act, 29 U.S.C. §§ 1001-1461 ("ERISA"); (ii) whether the Complaint states a claim

under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634 ("ADEA"); and (iii)

whether ERISA preempts Carroll's negligent-misrepresentation claim.  Because Carroll does not

identify what permissible forms of relief he is seeking under ERISA, the Court will dismiss his

ERISA claims without prejudice to him amending his Complaint to specify such relief.  Because

Carroll does not need to present a prima-facie case of discrimination at this stage, the Court will not

dismiss that claim.  Finally, because the Complaint alleges that Defendant Los Alamos National

Security, LLC ("LANS") was not Carroll's employer or the administrator of a plan at the time it

allegedly made misrepresentations to Carroll, the Court will not hold that Carroll's

misrepresentation claim is preempted at this time.  Accordingly, the Court will grant in part and

deny in part the motion to dismiss.  Carroll will have ten days from the entry of this opinion to

amend his ERISA claims to conform to the Court's rulings.

## FACTUAL BACKGROUND

When Carroll first began working for the Los Alamos National Laboratories ("LANL"), the University of California managed LANL under a contract with the Department of Energy. See Complaint for Damages From Violations of ERISA, The Age Discrimination in Employment Act, and Negligent Misrepresentation ¶ 12, at 2, filed October 16, 2008 (Doc. 1)("Complaint"). A consortium of public and private entities -- LANS -- took over the contract to run LANL on June 1, 2006. See id. As part of the transfer, Carroll, who was sixty at the time, received an "Employment Offer Package" from the University of California and LANS on March 15, 2006. Id. ¶ 13, at 2-3. The package offered two retirement-plan options, which became known as TCP1 and TCP2, and gave until May 15, 2006 to make a choice between them. See id. ¶¶ 14, 16 at 3.

When the University ran LANL, Carroll had chosen to be a "non-contributor," meaning that he did not have Social Security or Medicare contributions deducted from his salary.[1] Id. ¶ 17, at 3. Nearing retirement and knowing that he could not accumulate the forty quarters of contributions needed to receive Social Security or Medicare benefits before he retired, Carroll began inquiring how non-contributors like himself would be treated under the new retirement plans that LANS offered once he started making contributions. See id. ¶¶ 19-20, at 4. After several attempts at getting an answer, he was finally informed in late April or early May of 2006 that, under either TCP1 or TCP2, he would be reimbursed for any Social Security or Medicare contributions when he retired. See id. ¶¶ 21, 23, at 4-5. Carroll then chose TCP2. See id. ¶ 23, at 5. He alleges, however, that he was unable to obtain any reliable or accurate information about reimbursement by the May

---

[1] Carroll was apparently able to opt out of paying Social Security and Medicare as part of being an employee of the State of California.

15 deadline.  See id. ¶ 25, at 5.

On June 22, 2006, Carroll sent an e-mail to Ben Glover, a LANS employee responsible for supplying information on retirement plans.  See id. ¶ 26, at 5.  Carroll received no response, so he re-sent the e-mail July 21, 2006 and the same day was told that the administrative process was not set up yet, but was not told he was not eligible for reimbursement.  See id. ¶ 27, at 5.  LANS published its official reimbursement policy on December 11, 2006, which stated that only TCP1-covered employees would get reimbursement.  See id. ¶ 28, at 5-6.  Since summer 2006 and continuing to the present, Carroll had been having Social Security and Medicare deductions withheld from his paychecks.  See id.  He met every eligibility factor set forth in the reimbursement policy except for being enrolled in TCP1.  See id.

Carroll e-mailed Glover again on January 8, 2007, telling Glover that he had been told there would be no distinction between TCP1 and TCP2 as far as reimbursement, that the decision would adversely impact senior employees who had opted out of Social Security early in their careers with LANL, and that the reimbursement policy effectively lowered his salary because he could not recover the deductions.  See id. ¶ 31, at 6. Glover responded that he thought Carroll had been a TCP1 employee.  See id. ¶ 32, at 6.  During a series of e-mails throughout January, Carroll alleges that the misunderstandings "generated through LANS' representations and . . . lack of candor" were confirmed.  See id. ¶ 33, at 6-7.  According to Carroll, LANS also confirmed the confusion its inaccurate responses had generated before the May 2006 election of benefits deadline in an October 30, 2007 communication to employees.  See id. ¶ 34, at 7.

## PROCEDURAL BACKGROUND

On October 16, 2008, Carroll filed suit against LANS, alleging violations of ERISA, ADEA, and negligent misrepresentation under New Mexico common law.  He seeks damages for the Social

Security and Medicare contributions he paid, for lost benefits, and for emotional distress.  See Complaint ¶¶ 56-58, at 10.  He also seeks liquidated damages for willful violations of the ADEA, punitive damages, attorney's fees, costs, and pre- and post-judgment interest.  See Complaint ¶¶ 59-62, at 10-11.

LANS moves the Court to dismiss the Complaint pursuant to rule 12(b)(6) of the Federal Rules of Civil Procedure.  LANS contends that, while ERISA provides for a private right of action, it does not have any provision covering the relief that Carroll seeks.  See Motion at 4-7.  To the extent that Carroll seeks benefits under his retirement plan, LANS argues that he has failed to show he has exhausted his administrative remedies.  See id. at 7-9.  Next, LANS maintains that Carroll has failed to state a prima-face case of age discrimination because he could have chosen a plan that would allow for reimbursement, but did not.  See id. at 9-12.  Finally, LANS contends that ERISA preempts Carroll's negligent misrepresentation claim because it relates to his retirement plan and would effectively amend the terms of the plan.  See Motion at 12-17.

Carroll counters that his Complaint states a claim under ERISA and that the absence of citations to particular statutory subdivisions is not a fatal defect when the facts pled show an entitlement to relief.  See Plaintiff's Response to Defendant's Motion to Dismiss at 5-8, filed February 6, 2009 (Doc. 10)("Response").  Carroll also contends that his claims do not require him to exhaust administrative remedies.  See id. at 8-10.  Carroll then argues that he has stated a prima-facie claim of age discrimination because he alleges that his choice was "caused by [LANS'] discriminatory withholding of information and disparate provision of information."  Id. at 11.  Finally, Carroll maintains that ERISA does not preempt his negligent-misrepresentation claim because the claim involves pre-plan conduct and because he is not seeking benefits under a plan.  See id. at 12-13.

-4-

In reply, LANS argues that the flaw with Carroll's Complaint is not a failure to specify under what sections of ERISA he is seeking relief, but rather his claims not fitting within any of the categories of relief ERISA permits.  <u>See</u> Defendant's Reply in Support of Motion to Dismiss at 1-5, filed February 23, 2009 (Doc. 14)("Reply").  LANS also interprets Carroll's Response as conceding that he has not sought benefits under his plan and that, because he did not exhaust remedies, he is therefore barred from suing under ERISA.  <u>See</u> Reply at 6.  As to the ADEA claim, LANS contends that negligent misrepresentation is not an adverse action and that, regardless, the circumstances do not give rise to an inference of discrimination.  <u>See</u> Reply at 6-10.  In conclusion, LANS argues that ERISA preempts Carroll's negligent-misrepresentation claim because Carroll's reliance on pre-plan conduct will not allow him to escape preemption when the defendant is the plan fiduciary.  <u>See</u> <u>id.</u> at 10-12.

At the hearing, Michael Mozes, Carroll's attorney, agreed that damages were not available under ERISA, but contended that Carroll was seeking restitution.  <u>See</u> Transcript of Hearing at 25:11-20 (taken March 13, 2009)(Court & Mozes)("Tr.").[2]  Mr. Mozes later conceded that he did not see this case as involving unjust enrichment and that he would think over how Carroll could receive something resembling restitution under ERISA.  <u>See</u> Tr. at 25:11-27:21 (Court & Mozes). Scott Gordon, LANS' counsel, admitted that the equitable relief of reinstatement to a different benefit plan would be allowed under ERISA, but that the Complaint did not make such a request. <u>See</u> Tr. at 31:18-32:6 (Gordon).

## <u>STANDARD FOR DECIDING MOTIONS TO DISMISS</u>

Under rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which

---

[2] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain different page and/or line numbers.

relief can be granted." Fed. R. Civ. P. 12(b)(6). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994). The sufficiency of a complaint is a question of law, and when considering and addressing a rule 12(b)(6) motion, a court must accept as true all well-pleaded factual allegations in the complaint, and view those allegations in the light most favorable to the non-moving party and draw all reasonable inferences in the plaintiff's favor. See Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006); Hous. Auth. of Kaw Tribe v. City of Ponca City, 952 F.2d 1183, 1187 (10th Cir. 1991). A complaint challenged by a rule 12(b)(6) motion to dismiss does not require detailed factual allegations, but a plaintiff's obligation to set forth the grounds of his or her entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. (internal citation omitted). "[T]he [Supreme] Court recently . . . prescribed a new inquiry for us to use in reviewing a dismissal: whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir.2007)(quoting Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1967, 1969 (2007)). "The Court explained that a plaintiff must 'nudge his claims across the line from conceivable to plausible' in order to survive a motion to dismiss." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d at 1177 (quoting Bell Atl. Corp. v. Twombly, 127 S.Ct. at 1974.)(alterations omitted). "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these

claims." <u>Ridge at Red Hawk, L.L.C. v. Schneider,</u> 493 F.3d at 1177.

<u>**LAW REGARDING ERISA**</u>

ERISA is an intricate statutory scheme that provides nationwide standards for employee benefit plans.  Private rights-of-action are available under ERISA, but the statute specifies what forms of relief may be sought.  ERISA also has a broad preemptive effect and supersedes many state law causes of action.

**1.     Rights to Sue Under ERISA.**

ERISA creates a private right of action for a participant or beneficiary to an ERISA-covered benefits plan to seek various forms of relief.  Several provisions are relevant here.  A participant or beneficiary may sue "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).  Under § 1132(a)(1)(A), plaintiffs may bring suit in a variety of listed scenarios, including when a plan administrator "fails or refuses to comply with a request for any information which such administrator is required by this subchapter [of ERISA] to furnish to a participant or beneficiary."  <u>Id.</u> § 1132(c)(1).  ERISA also allows actions to be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." <u>Id.</u> § 1132(a)(3).

**2.     Preemption of State Law Causes of Action.**

29 U.S.C. § 1144, the express preemption section of ERISA, provides, in relevant part, that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan. . . ."  "A law 'relates to' an employee benefit plan, in the normal sense of the

phrase, if it has a connection with or reference to such a plan," Shaw v. Delta Airlines, Inc., 463 U.S. 85, 96-97 (1983), but § 1144 is not limited to "only state laws specifically designed to affect employee benefit plans," id. at 98.  "The scope of ERISA preemption . . . is very broad."  Straub v. Western Union Telegraph Co., 851 F.2d 1262, 1263 (10th Cir. 1988).  Although broad, ERISA preemption is not infinite.  The Supreme Court has often noted that "relate to" is a term which "provides little aid in actually determining whether ERISA supersedes state law."  Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co., 170 F.3d 985, 989 (10th Cir. 1999)(collecting cases). Instead, courts "must go beyond the unhelpful text and the frustrating difficulty of defining its key term [relate to], and look instead to the objectives of ERISA as a guide to the scope of state law that Congress understood would survive."  Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co., 170 F.3d at 989 (quoting New York State Conference of Blue Cross & Blue Shield v. Travelers Ins. Co., 514 U.S. 645, 655 (1995)).

In Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co., the United States Court of Appeals for the Tenth Circuit held that ERISA did not preempt an employer's state-law claims against an insurance company that had misrepresented the terms of an ERISA-covered insurance plan that it was selling.  The Tenth Circuit noted "that ERISA does not preempt all state law claims. It has no bearing on those which do not affect the relations among the principal ERISA entities, the employer, the plan, the plan fiduciaries and the beneficiaries as such."  Id. at 990 (internal quotation marks and alterations omitted).  The Tenth Circuit rejected the defendant's argument for preemption, and found inapposite a series of cases on which the defendant relied involving "fraudulent inducement claims affecting relations between primary ERISA entities."  Id.

The Tenth Circuit found two primary factors relevant to deciding whether the plaintiff's claims were preempted: (i) whether the relationship was one among principal ERISA entities; and

(ii) whether preemption would serve ERISA policy.   The defendant insurance company's misrepresentations had occurred before the plan itself and "by definition plan fiduciaries cannot exist.  Id. at 991.  That the company "may have later acted as a plan fiduciary" did "not alter its pre-plan status," and the Tenth Circuit thus found the insurance company to not have been acting as a core ERISA entity.  Id.  The Tenth Circuit also held that not preempting the claim against the insurer was consistent with ERISA's policy, "that is, to protect the interests of employees and other beneficiaries of benefit plans and establish uniform standards regulating such plans."  Id. at 991-92.  If ERISA preempted such claims, "employees, whom Congress sought to protect, would find themselves unable to make informed choices regarding available benefit plans."  Id. at 992 (internal quotation marks and brackets omitted).

## LAW REGARDING AGE DISCRIMINATION

Federal law makes it unlawful for employers to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age," 29 U.S.C. § 623(a)(1), or to "limit, segregate, or classify . . . employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age," id. § 623(a)(2).  When an employee lacks direct evidence of discrimination, "he still may carry his statutory burden by presenting circumstantial evidence in accord with the familiar *McDonnell Douglas* burden-shifting framework.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04, . . . (1973)."  Hinds v. Sprint/United Management Co., 523 F.3d 1187, 1195 (10th Cir. 2008).

> Under *McDonnell Douglas*, the plaintiff first bears the burden of establishing a prima facie case of age discrimination. If the plaintiff carries this burden, the employer must then come forward with some legitimate, non-discriminatory reason for the

adverse employment action. If the employer succeeds in this showing, the burden shifts back to the plaintiff to show that the employer's proffered justification is pretextual.

Hinds v. Sprint/United Management Co., 523 F.3d at 1195.

The McDonnell Douglas framework, however, "is an evidentiary standard, not a pleading requirement." Swierkiewicz v. Sorema N. A., 534 U.S. 506, 510 (2002). "[A] complaint must include only a short and plain statement of the claim showing that the pleader is entitled to relief. Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Id. at 512 (internal quotation marks omitted).

## ANALYSIS

In his Complaint, Carroll brings three separate claims against LANS: (i) for violations of ERISA; (ii) for age discrimination; and (iii) for negligent misrepresentation. His ERISA claims are inadequately pled, but the Court will allow him an opportunity to amend those claims. Because Carroll is not required to meet the McDonnell Douglas test at this stage of the case, his discrimination claim is sufficient to avoid dismissal under rule 12(b)(6). Finally, given the information in the Complaint, Carroll's allegations of misrepresentation are based upon conduct that occurred before the existence of an ERISA-covered plan and before LANS became his employer, and so ERISA does not preempt his misrepresentation claim.

## I.   CARROLL'S COMPLAINT FAILS TO STATE A CLAIM UNDER ERISA, BUT THE COURT WILL ALLOW CARROLL TO AMEND HIS COMPLAINT.

ERISA creates private rights of actions allowing certain forms of relief. Carroll's Complaint, however, seeks damages and unspecified relief under ERISA. LANS marches through various subsections of ERISA, arguing that Carroll's lawsuit does not fit under any of them. Carroll points to three forms of relief to which he believes he is entitled: (i) relief under 29 U.S.C. § 1132(a)(1)(A)

-10-

because LANS, both before and after he became a plan participant, withheld requested information from him; (ii) relief under § 1132(a)(1)(B) for similar reasons; and (iii) equitable relief under § 1132(a)(3) for breach of fiduciary duties.  Carroll's Complaint is cast in terms of damages; it is only with the clarifications in the briefing and at the hearing that it becomes apparent what relief Carroll is seeking that ERISA would permit.  Once the relief sought is clarified, however, the Complaint contains sufficient factual allegations to support causes of action under ERISA.  Because the Complaint's deficiencies are thus largely drafting errors, the Court will dismiss the ERISA claims without prejudice to Carroll clarifying the relief he seeks and upon which allegations those claims are premised.

Section 1132(a)(1)(A) allows civil actions for any relief allowed in subsection (c) of that section.  For his § 1132(a)(1)(A) relief, Carroll contends that LANS failed to comply with his requests for information.  Section 1132(c)(1) makes administrators liable to plan participants or beneficiaries for penalties "of up to $100 a day" for a failure to provide requested information that the defendant is obligated to furnish to the plan participant or beneficiary.  Carroll's Complaint alleges failures to provide information, but it makes no mention of the statutory penalties.  Instead, Carroll's requested relief is couched in terms of damages for "economic harms."  Complaint ¶ 39, at 8.  Because there are factual allegations that will support a claim for failure to provide information, the Court will dismiss the claim, but allow Carroll to amend his Complaint.

LANS argues that the facts Carroll alleges do not state a claim because only a denial of a request for certain documents that must be provided under § 1024 will support a claim under § 1132(c)(1) and because Carroll's requests for information were general.  Assuming that LANS is correct about the scope of § 1132(c)(1), on a rule 12(b)(6) motion, Carroll has provided sufficient information that he requested information about the plans.  He has not made conclusory statements

about being denied information, but has articulated what information he believes was withheld.  The salient question is whether the precise language of his requests is sufficient to be construed as a request for a document that LANS was obligated to produce.  This question is more appropriately addressed on summary judgment, when Carroll's e-mails and other documents will become part of the record.

Section 1132(a)(1)(B) allows a plan participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  Citing Moffett v. Halliburton Energy Services, Inc., 291 F.3d 1227, 1232 (10th Cir. 2002), Carroll contends that this provision also creates a right to sue when requested information is not provided.  As LANS notes, Moffett v. Halliburton Energy Services, Inc. assumes the existence of such a cause of action and affirms the dismissal of a plaintiff's claims on different grounds.  Other than pointing out that Moffett v. Halliburton Energy Services, Inc. does not expressly endorse using § 1132(a)(1)(B) for claims based on a failure to provide information, LANS does not further argue why that provision is inapplicable.  Instead, LANS rests on its argument that Carroll has failed to specify the information it was required under ERISA to produce.  Because the Court finds that there is sufficient factual detail on this point, the Court will allow Carroll to amend his Complaint to specify the relief he is seeking under this provision as well.

Section 1132(a)(3) is the final provision that Carroll identifies as grounds for relief.  This provision allows for equitable relief to redress "any act or practice which violates any provision of this subchapter or the terms of the plan."  29 U.S.C. § 1132(a)(3).  At the hearing, LANS conceded that Carroll could make a plausible claim for reinstatement -- although LANS may have other defenses to such a claim -- and the Court will therefore allow him to amend his Complaint to specify

such a claim.  See Tr. at 32:2-15 (Gordon & Court).  The remaining dispute is whether restitution is available, given that the deductions LANS withheld from Carroll's paycheck have been transferred to the federal government and restitution is aimed at "restor[ing] to the plaintiff particular funds or property in the defendant's possession."  Lind v. Aetna Health, Inc., 466 F.3d 1195, 1200 (10th Cir. 2006).  During the hearing, Carroll contended that he was entitled to equitable relief, including recovery of the amounts he paid into Social Security and Medicare, although he conceded he could not see unjust enrichment in this scenario and would have to think about how recovery could be achieved.  See Tr. at 25:11-27:21 (Court & Mozes).  Restitution, in the normal sense of remedying unjust enrichment, is not applicable here.  Accordingly, although the Court will allow Carroll to amend his Complaint to identify the equitable relief he seeks, if he seeks to recoup his payments to Social Security and Medicare under § 1132(a)(3), he will need to establish some other equitable basis.

In sum, the Court concludes that it should dismiss Carroll's ERISA claims because he fails to identify proper forms of relief available under ERISA.  Carroll has, however, identified in his briefing and at the hearing several appropriate forms of relief, which the facts he has pled in his Complaint adequately support.  Because the Complaint's problems are thus of a technical nature, the Court will dismiss the ERISA claims without prejudice and allow Carroll to amend his Complaint to articulate the forms of relief discussed here.[3]

_____

[3] The parties also debate whether Carroll was required to exhaust his administrative remedies before bringing suit under ERISA.  Carroll states that he is not seeking benefits under his plan and LANS argues that, because Carroll "seeks damages for the value of lost benefits," Complaint ¶ 57, at 10, even though he is not making a claim for benefits per se, exhaustion is required.  Given that the Court is allowing Carroll to amend his Complaint to raise claims under ERISA that are not "damages" claims, this dispute is moot at the present time.  LANS may reraise the issue if it feels that Carroll's amended Complaint still has this problem.

**II.      CARROLL'S AGE-DISCRIMINATION CLAIM IS SUFFICIENT TO SURVIVE A MOTION TO DISMISS.**

Carroll contends that LANS violated the ADEA and discriminated against him because of his age by withholding information from him, by forcing him to make a choice between retirement plans without the information he needed and had requested, and by deducting Social Security and Medicare from his paychecks when he had no hope of being reimbursed or of qualifying for benefits under either program. According to Carroll, younger employees "were neither required nor forced to have deductions made from their paychecks without prospects of reimbursement nor forced to have such deductions made in circumstances where the employee could not receive benefits for contributions made." Complaint ¶ 44, at 8. In the briefing and during much of the hearing, argument focused on whether Carroll had stated a prima-facie case of age discrimination, although Mr. Mozes briefly contended that he did not need to "prove up age discrimination today or [a] prima facie case of it. I think I need to plead a claim." Tr. at 21:6-8 (Mozes). Mr. Mozes' statement about what Carroll needs to show is correct. Given the standards for pleading employment discrimination that the Supreme Court articulated in <u>Swierkiewicz v. Sorema N. A.</u> -- which was an age-discrimination case, although its holding applies more broadly -- the Complaint adequately pleads an age-discrimination claim. Because the Court and the parties have devoted considerable attention to the prima-facie case, however, the Court will lay out some of the issues it sees to guide the parties as the case progresses.

In <u>Swierkiewicz v. Sorema N. A.</u>, the Supreme Court described the plaintiff's allegations, which it viewed as being sufficient to survive a motion to dismiss:

> Petitioner alleged that he had been terminated on account of his national origin in violation of Title VII and on account of his age in violation of the ADEA. His complaint detailed the events leading to his termination, provided relevant dates, and included the ages and nationalities of at least some of the relevant persons involved

> with his termination. These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest. In addition, they state claims upon which relief could be granted under Title VII and the ADEA.

Swierkiewicz v. Sorema N.A., 534 U.S. at 514 (citations omitted). As this recitation indicates, surviving a motion to dismiss on an ADEA claim is no great burden. It is during summary judgment that motion practice will generally "dispose of unmeritorious claims." Swierkiewicz v. Sorema N. A., 534 U.S. at 512. Compared with the pleading the Supreme Court approved in Swierkiewicz v. Sorema N.A., Carroll's Complaint is adequate. It alleges that he was discriminated against and lays out the events that led to what he believes is disparate treatment. No more is required at this stage. This case also perhaps highlights a major reason why the liberal pleading standards of rule 8(a) of the Federal Rules of Civil Procedure are important. Discovery might reveal either circumstantial or direct evidence of discrimination. Requiring more of plaintiffs at the very outset requires greater detail than most plaintiffs are likely to possess before discovery. See Swierkiewicz v. Sorema N.A., 534 U.S. at 511-12 (discussing discovery).

The parties and the Court have all spent considerable time on whether Carroll's claims state a prima-facie case of discrimination. Because the Court believes there are significant flaws to Carroll's theory at this point, even though stating a prima-facie case is not his burden at this time, the Court will sketch out some of its thoughts on the issue regarding what evidence it expects to see if the claim is to advance beyond summary judgment. "[D]ue to the wide range of forms discrimination can take in the employment context, the precise elements of a prima facie case vary from one setting to the next." Bittel v. Pfizer, Inc., 2009 WL 52064 at *4 (10th Cir.)(unpublished opinion). To make out a prima facie case of age discrimination, Tenth Circuit case law requires that a plaintiff show that he or she: (i) was within a protected age group, (ii) was doing satisfactory work, (iii) suffered an adverse employment action, and (iv) the adverse action took place in circumstances

giving rise to an inference of discrimination.  See Hinds v. Sprint/United Management Co., 523 F.3d at 1195; Sorbo v. United Parcel Service, 432 F.3d 1169, 1173 (10th Cir. 2005).  The fourth prong of the test is sometimes stated differently.  Earlier formulations of the test often required a showing that the plaintiff was being treated differently than similarly situated employees not of the protected class, see, e.g., Thomas v. IBM, 48 F.3d 478, 484-85 (10th Cir. 1995), but "the Supreme Court has specifically held that age-discrimination plaintiffs need not show disparate treatment as compared to co-workers outside the protected class," Sorbo v. United Parcel Service, 432 F.3d at 1173 (citing O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 311-12 (1996)).  More recent statements of the rule have framed the fourth element as requiring a showing of "circumstances giving rise to an inference of discrimination."  Sorbo v. United Parcel Service, 432 F.3d at 1173 (internal quotation marks omitted).  "While this broader requirement may be (and often is) satisfied by proof that the employer treated similarly situated employees more favorably, such proof is just one sufficient means to do this and should not itself be mistaken as an indispensable element of the prima facie case."  Id.

Two retirement options were made available to employees, including Carroll.  One of the options would have allowed for reimbursement.  Had Carroll picked that plan, he would not be faced with the prospect of paying Social Security and Medicare without much hope of being reimbursed for making contributions or of receiving benefits under the programs into which he is now paying.  Any inference of age discrimination must therefore be connected with LANS' alleged failures to provide accurate information.  Armed with the proper information, Carroll could have chosen differently.  If there is no evidence that LANS discriminated in providing or withholding information, it cannot have been discriminating against Carroll based upon his election of what is, to him, a less desirable plan.  The choice between plans was Carroll's, so he must be able to show

that he did not have a genuine choice to be able to show discrimination.

As the Complaint tells the story, Carroll, a sixty-year old employee, was misled and not given the information he requested about the new plans between which he had to choose between. Other than Carroll being a member of a protected class and suffering an adverse action, however, there does not seem to be any other facts at present that would indicate discrimination in how LANS provided or did not provide information to Carroll and other employees. Being a member of a protected class is not enough. Carroll must show something more, such as that older employees were not provided appropriate information while similarly situated younger employees received more accurate information. This inequality of information, of course, is not the only way that Carroll can show a prima-facie case as the litigation proceeds and the Court does not intend to box Carroll into a particular position, but only to help guide the parties.

**III.    BASED UPON THE INFORMATION IN THE COMPLAINT, ERISA DOES NOT PREEMPT CARROLL'S MISREPRESENTATION CLAIM.**

"The scope of ERISA preemption . . . is very broad." Straub v. Western Union Telegraph Co., 851 F.2d at 1263. With some exceptions not relevant here, ERISA "supersede[s] any and all State laws insofar as they may . . . relate to any employee benefit plan . . . ." 29 U.S.C. § 1144(a). Carroll's negligent-misrepresentation claim involves misrepresentations about how LANS' new retirement plans would treat reimbursement of Social Security and Medicare deductions. On the surface, Carroll's claim seems to relate to an employment-benefit plan and would therefore be preempted. ERISA preemption is not unlimited in scope, however, and the Supreme Court has often observed that "relate to" is a term which "provides little aid in actually determining whether ERISA supersedes state law." Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co., 170 F.3d at 989 (collecting cases). Instead, courts "must go beyond the unhelpful text and the frustrating difficulty

of defining its key term [relate to], and look instead to the objectives of ERISA as a guide to the scope of state law that Congress understood would survive."  Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co., 170 F.3d at 989 (quoting New York State Conference of Blue Cross & Blue Shield v. Travelers Ins. Co., 514 U.S. at 655).

Relying on Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co., Carroll's primary argument is that he is alleging misrepresentations made before he became a member of the TCP2 plan and ERISA therefore does not preempt his claim.  LANS contends that Carroll misreads the scope of Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co., which involved an insurance company's sale of an employee insurance plan to an employer, and that the holding of that case does not apply where the plan fiduciary or administrator is the one being sued.  On the facts revealed in the Complaint, Carroll has the better of this dispute.

Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co. relied heavily on the defendant in that case being an insurer selling a plan to an employer.  In approaching the subject, the Tenth Circuit noted that ERISA preemption "has no bearing on" state laws "which do not affect the relations among the principal ERISA entities, the employer, the plan, the plan fiduciaries and the beneficiaries as such."  Id. at 990 (internal quotation marks and alterations omitted).  The Tenth Circuit rejected the defendant's argument for preemption and found inapposite a series of cases on which the defendant relied involving "fraudulent inducement claims affecting relations between primary ERISA entities."  Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co., 170 F.3d at 990.  Initially, then, it might appear that ERISA would preempt Carroll's claim: he is suing LANS, his employer and the administrator of the TCP2 plan in which he is enrolled.

From what the Complaint says, however, LANS did not take over LANL until June 1, 2006, and Carroll has asserted that his misrepresentation claim stems from conduct before that date.  See

-18-

Complaint ¶ 12, at 1.  When the TCP plans came into existence is more ambiguous.  No specific date appears in the Complaint.  June 1, 2006 makes sense given the timing of the takeover, but May 15, 2006 -- which would still be after the alleged misrepresentations -- is stated as the deadline for choosing between plans.  See id. ¶ 16, at 3.  On a motion to dismiss the Court must draw all reasonable inferences in Carroll's favor, see Moore v. Guthrie, 438 F.3d at 1039, so the earliest the Court can assume the plan was in existence is May 15, 2006.  Regardless of the precise date, based on the Complaint, the alleged misrepresentations precede the plan.

As the Tenth Circuit stated in Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co., before a plan exists, "by definition plan fiduciaries cannot exist."  173 F.3d at 991.  Similarly, before June 1, 2006, LANS would only be Carroll's prospective employer, not his employer.   In Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co., the Tenth Circuit explained that, although the insurance company "may have later acted as a plan fiduciary," that fact did "not alter its pre-plan status."  Id.  The Tenth Circuit's standard creates a relatively bright-line rule that focuses on the actual status of the parties at the time of the alleged misrepresentation.  Applying these principles here, before there was a plan to administer and before LANS was Carroll's employer, Carroll and LANS were not primary ERISA entities vis-a-vis each other.   Alleged misrepresentations from that time period would be best characterized as "not affecting relations between ERISA entities, as such," and thus not preempted.  Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co., 170 F.3d at 991.  See Uselton v. Commercial Lovelace Motor Freight, Inc., 940 F.2d 564, 583 n.19 (10th Cir. 1991)(noting, in the course of holding that ERISA does not displace securities law, that a number of courts have found fraudulent-inducement claims to not be preempted, which "suggests that ERISA is not directed to prevention of the sort of pre-participation fraud and misrepresentation that would be actionable under the Securities Acts").

In addition to the relationship between the parties, the Tenth Circuit in Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co. also based its holding on ERISA's policies not supporting preemption in that case. Like Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co., allowing a misrepresentation claim on the facts here would not undermine Congress' policy in enacting ERISA, "that is, to protect the interests of employees and other beneficiaries of benefit plans and establish uniform standards regulating such plans." 170 F.3d at 991-92. Rather, permitting such claims would further the goal of enabling employees "to make informed choices regarding available benefit plans." Id. at 992 (internal quotation marks omitted). Holding companies responsible for pre-plan, pre-employment misrepresentations "will not affect the administration or calculation of benefits, nor does it alter the required duties of plan fiduciaries." Id.

While Carroll relies on Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co., LANS relies on several other cases. These cases do not persuade the Court that it should construe Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co. differently. In Straub v. Western Union Telegraph Co., the Tenth Circuit held that ERISA preempted a plaintiff's negligent-misrepresentation claim against a former employer. In that case, however, the plaintiff was still participating in the defendant's pension plan at the time of the alleged misrepresentations. See 851 F.2d at 1263. Here, there not being a plan at the time of the misrepresentations is a key feature and one which distinguishes this case from Straub v. Western Union Telegraph Co. Maez v. Mountain States Tel. and Tel., Inc., 54 F.3d 1488 (10th Cir. 1995), is also inapposite. In that case, the plaintiffs sought benefits under their former employer's plan and also sought to invoke promissory estoppel under state law, which would have expressly altered the terms of the plan. See id. at 1491-92, 1496. LANS also cites a District of Colorado case involving a scenario similar to the one here. In Anglund v. American Tel. and Tel. Co., 828 F.Supp. 809 (D.Colo. 1993), the court found that

ERISA preempted the plaintiff's claims based on alleged misrepresentations about a benefit plan that helped induce the plaintiff to come work for the defendant. Anglund v. American Tel. and Tel. Co. precedes Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co. by several years, however, and did not give any significant discussion to the whether the alleged misconduct was pre-plan, noting only that the plaintiff was a "potential or actual plan participant." Anglund v. American Tel. and Tel. Co., 828 F.Supp. at 813. While factually on point, the Court thus does not view it as being persuasive in light of the Tenth Circuit's later decision in Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.

LANS also cites a case from outside the Tenth Circuit. In Zipperer v. Raytheon Co., Inc., 493 F.3d 50 (1st Cir. 2007), cert. denied, 128 S.Ct. 1248 (2008), the United States Court of Appeals for the First Circuit rejected the plaintiff's argument that his misrepresentation claim sought only negligence damages and not reinstatement, and that ERISA should not preempt his claim. See id. at 53-54. Unlike here, however, the plaintiff in Zipperer v. Raytheon Co., Inc. based his misrepresentation claims on statements his pension plan administrator had made to him. See id. at 51-52. In this case, the Court cannot assume that a plan administrator is being sued.

In sum, the Court does not see grounds for preemption based on the allegations in the Complaint because the alleged misrepresentations occurred before there as a plan under ERISA and before LANS employed Carroll. This conclusion is based upon the facts as stated in the Complaint. Given the nature of the transfer of management and the apparent cooperation between LANS and the University of California in informing employees about benefits under the forthcoming plans, see Complaint ¶ 13, at 2-3 (stating that the University of California and LANS sent employees a package that outlined their retirement choices after the transfer), there is some indication that LANS should be treated as more than just a typical prospective employer. The Complaint, however, does

not contain further facts about the relationship and all reasonable inferences must be drawn in Carroll's favor.  Taking the Complaint as true, the Court is assuming that there was no plan before May 15, 2006 at the earliest and that LANS was not Carroll's employer until June 1, 2006.  Further facts may be revealed as the case develops, but on the Complaint's allegations there is no preemption.  Another issue that is unclear at present, but which may be fleshed out in discovery and which could raise a preemption issue, is what Carroll's damages theory is.  Damages that depend upon the calculation of plan benefits may well indicate that the claim should be preempted -- an issue that features prominently in out-of-circuit cases but to which the Tenth Circuit has not devoted much attention.  See, e.g., Thurman v. Pfizer, Inc., 484 F.3d 855, 862-64 (6th Cir. 2007)(holding that ERISA preempts claim that employer's misrepresentations about benefits induced plaintiff to join company to the extent that plaintiff sought expectation damages, but not to the extent he sought reliance damages); Carlo v. Reed Rolled Thread Die Co., 49 F.3d 790, 794 (1st Cir. 1995)(holding that ERISA preempts misrepresentation claim because damages computation would entail construing plan benefits).

**IT IS ORDERED** that the Defendant's Motion to Dismiss is granted in part and denied in part.  The Court dismisses Plaintiff David Carroll's claims under ERISA without prejudice, but otherwise denies the motion.  The Plaintiff will have ten days from the entry of this opinion to amend his Complaint to conform his ERISA claims to this opinion.

_____
UNITED STATES DISTRICT JUDGE

-22-

*Counsel*:

Michael E. Mozes
Law Offices of Michael E. Mozes, P.C.
Albuquerque, New Mexico

> *Attorneys for the Plaintiff*

Scott D. Gordon
Julie P. Neerken
Rodey, Dickason, Sloan, Akin & Robb
Albuquerque , New Mexico

> *Attorneys for the Defendant*